IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                      Criminal Action No. 3:13-cr-23-06

ADAM NICHOLAS BRADY,

      Defendant.

## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION TO SUPPRESS A SUGGESTIVE PHOTOGRAPHIC IDENTIFICAITON [136] BE DENIED

### I. INTRODUCTION

      This matter comes before the Court on Defendant Adam Nicholas Brady's Motion to Suppress a Suggestive Photographic Identification. (Def.'s Motion, Sept. 18, 2013, ECF No. 136). On October 4, 2013, the United States of America (hereinafter, "the Government") filed its response to Defendant's Motion. (Response, Oct. 4, 2013, ECF No. 152). On October 8, 2013, the Court held an evidentiary hearing and argument on Defendant's Motion. Defendant appeared in person and by counsel, William Francis Xavier Becker, Esquire. The Government was present by Paul T. Camilletti, Assistant United States Attorney, appearing on behalf of Assistant United States Attorney Stephen L. Vogrin. At the hearing, the Government presented the testimony of Sergeant Matthew Zollinger with the Martinsburg City Police Department who is currently assigned to the Eastern Panhandle Drug and Violent Crime Task Force. The Court also admitted Exhibit One submitted by the Government, which is the piece of paper containing the single photograph of Defendant that was shown to the confidential informant for the purposes of identification. No additional testimony or other evidence was presented.

### A. Background

Defendant, Adam Nicholas Brady, is one of nine defendants in a fifty-one (51) count Indictment, plus forfeiture allegation, relating to the distribution of cocaine base in or near Martinsburg, West Virginia. (Indictment, ECF No. 1). Defendant is named in Count One (1) of the Indictment, which charges all nine (9) defendants with conspiracy to distribute twenty-eight (28) grams or more of cocaine base, also known as crack, from approximately July 16, 2009 to January 17, 2013 in or near Martinsburg, West Virginia. (*Id.*). Count Thirty-Seven (37) charges Defendant with the use of a telephone to facilitate the distribution of crack cocaine on January 18, 2011. (*Id.*). Count Thirty-Eight (38) charges Defendant and co-defendant, Trey Cardale Campbell, with aiding and abetting each other to distribute 0.79 grams of crack cocaine within 1,000 feet of a protected location, specifically, Burke Street Elementary School in Martinsburg, West Virginia, on January 18, 2011. (*Id.*). Count Forty (40) charges Defendant along with two co-defendants, Ashley Lucille Dixson and David Lee Ferguson, with aiding and abetting each other in the distribution of 0.16 grams of cocaine base within 1,000 feet of Burke Street Elementary School on January 20, 2011. (*Id.*).

### B. The Motion

Motion to Suppress a Suggestive Photographic Identification (ECF No. 136).

### C. Recommendation

I recommend that Defendant's Motion to Suppress a Suggestive Photographic Identification (ECF No. 136) be **DENIED** because even though the use of a single photograph was unduly suggestive, a subsequent identification by Confidential Informant – Pony (hereinafter "CI-Pony") would be sufficiently reliable based on the totality of the circumstances.

## II. FACTS

During the course of a 2011 investigation into drug distribution in Martinsburg, West Virginia, officers conducted a series of controlled purchases using a confidential informant known as CI-Pony. (Hr'g Tr. 14, Oct. 8, 2013, ECF No. 212). CI-Pony had worked with investigators by making "buys" for approximately one or two months. (*Id.* at 19). He mentioned to officers that he could purchase drugs from an individual he knew as "Bradley." (*Id.* at 14). CI-Pony stated he had known Bradley for several months based on seeing him around the neighborhood. (*Id.*). CI-Pony had Bradley's phone number and made a controlled call to arrange a meeting to purchase crack cocaine. (*Id.* at 15). The controlled purchase was surveyed using both audio and visual equipment as well as officers on the ground. (*Id.*). Officers saw Defendant and co-defendant, Trey Campbell, meeting with CI-pony outside of the residence. (*Id.*). The three individuals entered the residence and a drug deal was accomplished. (*Id.*). Officers then reported seeing Defendant leave the residence. (*Id.*).

A few days after the controlled purchase, investigating officers showed CI-Pony a photograph of Defendant in order to verify that the suspect the confidential information referred to as "Bradley" and the individual he made the controlled purchase from was in fact Defendant. (*Id.* at 16). At the hearing, Sgt. Zollinger stated that he did not remember the exact day CI-Pony viewed the photograph and could not remember the exact location CI-Pony was shown the photograph. (*Id.* at 20-21). Sgt. Zollinger indicated that CI-Pony was most likely shown the photograph while in the field, perhaps in his automobile. (*Id.* at 20). Sgt. Zollinger did not believe that the identification occurred at CI-Pony's residence or the police station. (*Id.*). He did not remember the time of day CI-Pony was shown the photograph but stated it could have been at night. (*Id.*). Sgt. Zollinger testified that he did not have any particular notes or instructions

given to CI-Pony before he made the identification and he did not recall if anyone else was present when the identification was made. (*Id.* at 21).

According to Sgt. Zollinger's testimony at the hearing, the photograph shown to CI-Pony was a jail photograph that measured approximately two by two inches (i.e., approximately the size of a passport photo). (*Id.* at 22; Exhibit 1, ECF No. 195-1). The photograph is printed on a letter sized piece of paper titled "Person History Report." (Exhibit 1, ECF No. 195-1). The top of the document includes the text "Martinsburg Police Department" along with the Department's address and phone number. (*Id.*). Defendant's full name appears in capital letters directly above Defendant's photograph on the piece of paper. (*Id.*).

Sgt. Zollinger testified that this piece of paper containing the photograph was shown to CI-Pony in order to "make sure it was the same subject that he knew as Bradley." (Hr'g Tr. 16). In other words, Sgt. Zollinger stated that the purpose of showing CI-Pony the photograph was to verify the name of the participant involved in the controlled purchase on January 18, 2011. (*Id.* at 25). Sgt. Zollinger testified that he was familiar with Defendant from approximately a year prior and knew that Defendant frequently accompanied Mr. Campbell, the second individual who was positively identified by officers during the January 18, 2011 controlled purchase. (*Id.* at 16, 24-25, 28, 29-30). The investigating officers suspected that Defendant was in fact the same person that CI-Pony referred to as "Bradley" because Defendant was always known to be with Mr. Campbell, Defendant matched the description given by CI-Pony and due to the similarity between the names "Bradley" and "Brady." (*Id.*).

### III. **MOTION TO SUPPRESS PHOTOGRAPHIC IDENTIFICATION**

A. **Contentions of the Parties**

Defendant contends that due to an impermissible and suggestive photographic identification by CI-Pony that any subsequent in-court identification is "tainted and improperly

suggestive" and must be suppressed. (Def.'s Motion at 2, ECF No. 136). Defendant explains that the use of a single photograph indicates to the identifying witness that this lone individual in the photograph is in fact the subject of the investigation. (*Id.*). The presentation of the single photograph stands in stark contrast to the objective, fair and proper use of a "photographic array" containing multiple individuals. (*Id.*). By showing the witness just one photograph, the witness is not able to properly exclude individuals or independently confirm the identity of the alleged participant. (*Id.*).

Defendant argues that the risk of impermissible identification increases when a witness is only shown a single picture. (*Id.*) (citing *Kimbrough v. Cox*, 444 F.2d 8, 10 (4th Cir. 1971)). The use of one picture is "inherently suggestive" to the witness in violation of due process, which prohibits the use of an out-of-court identification obtained through procedures that have a substantial likelihood of resulting in an "irreparable misidentification." (*Id.*) (citing *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967 (1968); *United States v. Saunders*, 501 F.3d 384, 389 (4th Cir. 2007)). Based on this improper identification of Defendant using the single photograph, he asserts that the jury should not hear "eyewitness" testimony related to the identification because it lacks reliability. (*Id.*). Therefore, Defendant argues that the identification procedure using the single photograph should be deemed impermissible and any resulting identifications attributed to the witness shown the single photograph should be suppressed. (*Id.* at 2-3).

The Government contends that the use of a single photo or a crime scene "show up" is not in and of itself "impermissibly suggestive" and does not make the identification "manifestly suspect." (Response at 3, ECF No. 152). The Government contends that any subsequent identification by CI-Pony would be sufficiently reliable under the totality of the circumstances

because the identification was based on CI-Pony's previous interactions with Defendant. (*Id.* at 4). The Government explains that CI-Pony was asked to identify a person whom he had known for an extended period of time, not an unknown individual or stranger. (*Id.*). CI-Pony was also shown the photograph shortly after he conducted a controlled purchase with Defendant. (*Id.*). Because CI-Pony was familiar with Defendant and had dealings with Defendant prior to seeing the photograph, this prior exposure serves as an independent basis for identification. (*Id.* at 4). The Government contends that the photograph corroborated CI-Pony's identification of Defendant and was not unduly suggestive as to taint the ability of the confidential information to subsequently identify Defendant. (*Id.*).

### B. Discussion

The defendant bears the burden of proof when challenging the admissibility of identification testimony. *See United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997) (citing *United States v. Wade,* 388 U.S. 218 (1967)). The determination of whether identification testimony is admissible is made on a case by case basis. *See Simmons v. United States*, 390 U.S. 377, 384 (1968). "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.; see also United States v. Saunders*, 501 F.3d 384, 389 (4th Cir. 2007) (stating that "[d]ue process principles prohibit the admission at trial of an out-of-court identification obtained through procedures 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'").

The Supreme Court outlined a two-step analysis regarding the admissibility of identification testimony: first, the Court considers whether the initial identification was impermissibly suggestive, and second, even if the identification procedure was suggestive, a

subsequent in-court identification may still be considered valid if it is deemed reliable. *See United States v. Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996) (citing *Manson v. Brathwaite*, 432 U.S. 98, 110, 97 S.Ct. 2243 (1977); *Neil v. Biggers*, 409 U.S. 188, 198-99, 93 S.Ct. 375 (1972); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967 (1968); *Willis v. Garrison*, 624 F.2d 491, 493 (4th Cir. 1980)). When determining the reliability of a subsequent in-court identification, the court considers the totality of the circumstances. *See Manson v. Brathwaite,* 432 U.S. at 114; *see also Holdren v. Legursky,* 16 F.3d 57 (4th Cir. 1997). The Supreme Court provided five factors for courts to consider when determining the reliability of an identification: (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention at the time of the offense; (3) the accuracy of the witness' prior description of the perpetrator; (4) the witness' level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the crime and the confrontation*. See Wilkerson*, 84 F.3d at 695 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200).

Under the first prong of the Supreme Court test, the use of a single photograph for identification has been found to be impermissibly suggestive. However, the Court still looks to the totality of the circumstances to determine if the identification may be sufficiently reliable. In *United States v. Johnson*, the Fourth Circuit found the use of a single photograph for identification to be unduly suggestive, but found the subsequent in-court identification to be sufficiently reliable based on the *Neil v. Biggers* factors. 114 F.3d 435, 441-42 (4th Cir. 1997). The *Johnson* court pointed out that "[t]he Supreme Court has consistently questioned the use of a single photograph for pretrial identification, and has encouraged the use of a reasonable photographic display." *Johnson*, 114 F.3d at 441-42 (citing *Brathwaite,* 432 U.S. at 116-17 (stating that the use of a single photograph for identification "may be viewed in general with

suspicion," but holding the identification to be reliable.)). Similarly, in *Simmons*, the Supreme Court stated that the risk of misidentification increases when "police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized." *Simmons*, 390 U.S. at 383. Additionally, "[o]ther circuit courts of appeal have held that the display of a single photograph is unduly suggestive, but have nonetheless held that under the second part of the identification test, the totality of the circumstances, the identification was sufficiently reliable to preclude the substantial likelihood of misidentification." *Johnson*, 114 F.3d at 441-42 (citing *United States v. Washington,* 12 F.3d 1128, 1134 (D.C. Cir. 1994); *United States v. Sanchez,* 988 F.2d 1384, 1389–91 (5th Cir. 1993); *Ruff v. Wyrick,* 709 F.2d 1219, 1220 (8th Cir. 1983)).

In the present case, police investigators presented a single photograph of Defendant to CI-Pony. (Exhibit 1, ECF No. 195-1). The presentation of a single photograph, particularly with Defendant's name printed directly above the photograph, falls short of proper procedures for pretrial photographic identification. Based on the evidence presented, there did not appear to be an emergency that prevented officers from presenting a proper array of photographs of numerous individuals in order to obtain a fair and objective identification. *See Brathwaite*, 432 U.S. at 108. Therefore, the use of a single photograph of the alleged participant for the purposes of identification is unduly suggestive.

However, under the totality of the circumstances in this case, Defendant fails to demonstrate "a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384. When applying the five *Neil v. Biggers* reliability factors to this case, I find that:

suspicion," but holding the identification to be reliable.)). Similarly, in *Simmons*, the Supreme Court stated that the risk of misidentification increases when "police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized." *Simmons*, 390 U.S. at 383. Additionally, "[o]ther circuit courts of appeal have held that the display of a single photograph is unduly suggestive, but have nonetheless held that under the second part of the identification test, the totality of the circumstances, the identification was sufficiently reliable to preclude the substantial likelihood of misidentification." *Johnson*, 114 F.3d at 441-42 (citing *United States v. Washington,* 12 F.3d 1128, 1134 (D.C. Cir. 1994); *United States v. Sanchez,* 988 F.2d 1384, 1389–91 (5th Cir. 1993); *Ruff v. Wyrick,* 709 F.2d 1219, 1220 (8th Cir. 1983)).

In the present case, police investigators presented a single photograph of Defendant to CI-Pony. (Exhibit 1, ECF No. 195-1). The presentation of a single photograph, particularly with Defendant's name printed directly above the photograph, falls short of proper procedures for pretrial photographic identification. Based on the evidence presented, there did not appear to be an emergency that prevented officers from presenting a proper array of photographs of numerous individuals in order to obtain a fair and objective identification. *See Brathwaite*, 432 U.S. at 108. Therefore, the use of a single photograph of the alleged participant for the purposes of identification is unduly suggestive.

However, under the totality of the circumstances in this case, Defendant fails to demonstrate "a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384. When applying the five *Neil v. Biggers* reliability factors to this case, I find that:

1. Opportunity to View. CI-Pony had ample time to view Defendant during the controlled purchase. Sgt. Zollinger testified that CI-Pony first met Defendant outside a residence and then accompanied him inside. Additionally, CI-Pony had known Defendant for several months prior to the controlled purchase on January 18, 2011.
2. Degree of Attention. CI-Pony did not view Defendant as a stranger or as a passerby. CI-Pony had been working as a confident informant for months and engaged in the controlled purchase knowing he was meant to identify the individuals involved in the transaction.
3. Accuracy of Prior Description. Sgt. Zollinger testified that CI-Pony provided to investigating officers a description of the individual involved in the controlled purchase on January 18 that matched Defendant's physical description.
4. Witness' Level of Certainty. Based on Sgt. Zollinger's testimony, CI-Pony positively identified Defendant as the individual in the photograph he was shown. He confirmed that this was the individual he referred to as "Bradley," who was the individual from which he made the controlled purchase on January 18.
5. Time between the Crime and Identification. Sgt. Zollinger testified that the identification was made a few days after the controlled purchase, but before the January 20, 2011 controlled purchase. This indicates the identification was made within two (2) days of the controlled purchase on January 18.

These factors weigh in favor of the reliability of CI-Pony's identification. CI-Pony knew Defendant prior to the controlled purchase, met with Defendant both outdoors and inside a residence during the January 18 controlled purchase, provided a description of the individual from which he made the controlled purchase that matched Defendant's description, and made a

positive identification of Defendant just days after the controlled purchase. Although the use of the single photograph to identify Defendant is suspect, the totality of the circumstances demonstrate the reliability of CI-Pony's subsequent identification of Defendant.

### IV. **RECOMMENDATION**

I recommend that Defendant's Motion to Suppress a Suggestive Photographic Identification (ECF No. 136) be **DENIED** because even though the use of the single photograph for the purposes of identification was impermissibly suggestive, the totality of the circumstances weigh in favor of the reliability of CI-Pony's identification of Defendant.

Any party may, before October 16, 2013 at 5:00pm EST, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED.**

DATED: October 15, 2013

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE